Opinion of the court by
Judge Mills.
[Absent Chief Justice Bibb.]
The appellants, who were complainants, as trustees of Edward S. Thomas and family, filed their bill in the court below, alleging that said Edward and his wife and his father-in-law, Walter Beall, had sold, many years since, a tract of land, the title of which was in Mrs. Thomas or Walter Beall, her father, to Walter Brashear. at the price of $4,000. For $2,000 of this sum, Brashear gave in payment, another tract of land, for which he held the bond of a certain Mr. Rogers; and for a part of the residue, said Brashear gave his notes to said Thomas, payable at a then distant day, and in discharge of the balance, he was to set off and extinguish two judgments, one for about §300. hearing interest, which said Brashear held on said Thomas, and another on the same, held by Hackley and Barr, which Brashear professed to be the owner of, or engaged to procure, and to extinguish it likewise. That the exchange took place as to the possession of the two farms, and the payment of the judgments; and the parties remained in that attitude for many-years.—That shortly after the making of said contract, the said Walter Beall and his son-in-law. Thomas and wife, united in a deed to the complainants, constituting them trustees of said Edward S. Thomas and wife, and conveying to them the estate of said Thomas and some portion of her father’s estate, to be held in trust for Thomas and wife, during their lives, and after their death to pass to their children; which gave the said trustees the title and control of what Thomas possessed; and that Brashear, instead of assigning the bond which he held on Rogers for the conveyance of the tract of laud, and which he *66 was to pay to Thomas, assigned it to the complainants as trustees.
Injunction.
Plea by the defendant in bar of the relief.
That after matters had remained some time in this situation, it was agreed between the parties, and said Brashear, that the contract for land should be rescinded, and the farms re-exchanged; that in pursuance thereof, the notes of Brashear for the residue of the price, were surrendered, and the bond of Rogers was re-assigned by the trustees to said Brashear; and that as Brashear then became entitled to the amount of his judgments, which he had paid in part discharge of the price of the land, the trustees, in a writing which sets forth the terms of the rescinding contract, bound themselves on a future day to pay the amount of said judgments to Brashear, calculating the interest thereon up to the time when said judgments were supposed to be extinguished by the payment of them from Brashear to Thomas and no longer. And the trustees allege, that in discharge of said judgment they paid a slave to Brashear at the price of §400, but that Brashear, instead of abiding by his contract with the trustees, and seeking from them the amount of his judgments, with the interest up to the period when they were formerly supposed to be settled under the first contract, had issued his execution on the said judgments against Thomas, and claimed to collect the full amount of interest from the time the judgments were formerly settled in the original contract to this time.
They make Brashear and Hackley and Barr, defendants, and prayed for, and obtained, an injunction against the judgments, and an allowance of their credits, and a discount of the interest, leaving Brashear to receive the balance only.
Brashear and Hackley and Barr, appeared, and in bar of this bill of the trustees, pleaded and set out the records of two suits in chancery, brought by Edward S. Thomas alone, one against Brashear, and the other against Hackley and Barr, to which the trustees were not made, parties by the service, of process, claiming a discount of the same interest by *67 virtue of the same contract with the trustees and in which decrees were rendered against him.
In chancery there is no demurrer to a plea to a bill—It should be set down for argument. Damages by the statute on the dissolution of an injunction is given only where the defendant to the judgment is complainant, and obtains the injunction not where the order is obtained on the application of others.
Here, a set of entries and proceedings appear on the record, which seem to intimate that the counsel concerned, forgot that, they were acting the part of solicitors in a court of chancery, and supposed themselves in a court of law, pursuing its rigid an.d technical rules, and from a suit in equity at the commencement, the proceeding is entirely metamorphosed into a record of a suit at law at the close. A formal demurrer to the plea is filed, instead of setting the plea for argument. That demurrer,is argued, and then withdrawn, and a replication to the plea is filed, alleging that the trustees were not parties to the records relied on; then came a,demurrer to the replication from the other side, with a joinder and argument; and in response to that, the court, or at least the clerk, participating in the general error, rendered a formal judgment at law, dissolving the injunction with damages, and dismissing the bill with costs; to reverse which, this writ of error is prosecuted.
It is clear, that these proceedings cannot be supported. For if we waive the form, and try to search for the substance, and suppose the judgment to mean a decree, and the replication, demurrer and joinder, to be equivalent to setting the plea for argument as insufficient, we cannot perceive the principle on which ton per centum damages on the amount enjoined, could be given against the trustees. That penalty, if such it can be called, can only be given against a defendant in a judgment, who becomes complainant in equity, in favor of the plaintiff at law, who is made defendant in equity on the dissolution of an injunction on the judgment between the legal parties thereto; and the Act of Assembly, inflicting it, cannot be construed to apply to third parties or strangers, who, not being legal parties to the judgment, have such an interest in the collection of it, that it is necessary to obtain an injunction, retarding the collection thereof, until justice is done; and such is the situation of the trustees in this instance.
It is generally true that to conclude the claim to a rest fund by a decree or judgment, it must be against the trustee, and that a decision against cestui que trust only will be ineffectual.
Trustee covenanted, with the owner of a judgment against cestui que trust, to pay it without interest, which the owner agreed to accept, in satisfaction, and part was accordingly paid, yet execution was sued out for interest and all; held the trustee may maintain his bill, and have either perpetual injunction for the interest or cancelment of his obligation to pay the judgment— —In such case a decission against the cestui que trust, on the same equity, will not bar trustee from a cancelment of his obligation.
*68 Nor do we discover the principle on which a proceeding between Thomas the cestui que trust, and Brashear and Hackley and Barr, to which the trustees were not parties or privies, ran extinguish or bar the interest of the trustees, under their contract with Brashear. It would be better reasoning to suppose, that a judgment or decree against the trustees, in a matter touching the trust estate, would bar the cestui que trust, In the trustee the legal right is vested for the purpose of conducting controversies, and to them the agency is given as substitutes for the cestui que trust, and generally, what is done between them and strangers, in, pursuance and execution of the powers of the trust, binds the cestui que trust, although by an abuse of that power, or a waste or injury committed under it, they may become responsible in equity to the cestui que trust.
It is true the bills brought by Thomas against Brashear and Hackley and Harr, are dismissed absolutely, and they may be deemed conclusive against Thomas as to the claim, as to his individual rights; but as to the rights of the trustees, the trust fund, and the contract made with them, which they seek to enforce in the bill, they can have no operation.
This contract, if valid, they have a right to enforce; and if it cannot be enforced, they have a right to set it aside in a court of equity, and be released from the stipulations in which they are personally bound to Brashear, if Brashear will not abide by the stipulations on his part.
If it should turn out, that Brashear, by the bar which he has obtained against Thomas, has a right to enforce his judgments against the trust estate, because the trust is invalid. it would seem necessarily to follow, that the trustees should be released from their personal obligation to pay the amount of these judgments, and to a restoration of what they have paid.
It is evident, that for a long time, not only the interest, but the entire judgments wore considered as extinguished in equity. When the contract for land was rescinded, the claim for a restoration of the am *69 ount of the judgments, when they were extinguished, was of course revived, and with this amount Brashear became satisfied, and agreed by his written stipulation to accept it, without claiming the still accruing interest, which could not accrue after the judgments were extinguished. This is the meaning of his stipulation, and his object is to avoid it. He ought not to be permitted to do so, and still hold the parts of his contract with the trustees which are beneficial to himself.
Barry for plaintiffs; Haggin for defendants.
The decree must be reversed with costs, and the cause be remanded, with directions to overrule the plea as insufficient, and to direct an answer, and such other and further proceedings as equity may require.